# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, CAMPANELLA, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Staff Sergeant STEPHEN T. COLLIER**
**United States Army, Appellant**

ARMY 20120554

United States Army Maneuver Support Center of Excellence
and Fort Leonard Wood
Jeffery R. Nance, Military Judge
Colonel James R. Agar II, Staff Judge Advocate (pretrial)
Colonel Robert F. Resnick, Staff Judge Advocate (post-trial)

For Appellant:  Lieutenant Colonel Jonathan F. Potter, JA; Captain Aaron R. Inkenbrandt (on brief)

For Appellee:  Major Robert A. Rodrigues, JA (on brief).

31 March 2014

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

CAMPANELLA, Judge:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of disrespect towards a commissioned officer; two specifications of disobeying a superior commissioned officer; two specifications of making a false official statement; one specification of aggravated assault; six specifications of assault consummated by battery; one specification of obstructing justice; and one specification of communicating a threat in violation of Articles 89, 90, 107, 128, and 134 of the Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 889, 890, 907, 928, and 934 (2006).  The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for four years, and reduction to the grade of E-1.[1]

---

[1]  At trial, the military judge ordered that appellant receive 228 days of confinement credit.  The convening authority's action failed to include this credit.  *See* Rule for

(continued . . .)

COLLIER —ARMY 20120554

This case is before us for review pursuant to Article 66, UCMJ. Appellant submitted a merits pleading to this court and personally raised matters pursuant to *Unites States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). We find the issues raised by appellant without merit. We find one additional issue, however, warrants discussion and relief.

## BACKGROUND

In the Specification of Charge VI, appellant was charged with a violation of Article 89, UCMJ. The specification alleged:

> In that [appellant], U.S. Army, did at or near the Tigris River,
> Iraq, between on or about 3 November 2009 and or about
> 17 November 2009 behave himself with disrespect toward
> [LT JC], his superior commissioned officer, then known
> by the [appellant] to be his superior commissioned officer,
> by arguing with [LT JC] and then throwing the [appellant's]
> Kevlar Helmet into the Tigris River.

While deployed to Balad, Iraq, appellant was an assistant section sergeant. Lieutenant (LT) JC (at the time of trial a Captain), appellant's platoon leader, testified and described an occasion where his unit was performing emergency bridge repairs. Lieutenant JC stated his unit spent several days trying to repair a broken bridge over the Tigris River. One evening, while they were working at the bridge site, at around two or three in the morning, LT JC decided it was late and it was time to leave. The appellant asked LT JC for 10-15 more minutes to finish what he was working on. LT JC gave him 10 extra minutes. When LT JC returned 10 minutes later and told appellant it was time to depart, appellant burst into anger and yelled "am I the only person here who wants to work?" Appellant then, out of frustration, threw his own Kevlar helmet into the Tigris River. It was not recovered.

At trial, the defense counsel questioned LT JC on cross examination:

---

(. . . contined)
Courts-Martial 1107(f)(4)(F); Army Reg. 27-10, Legal Services: Military Justice, para. 5-32 (3 Oct. 2011) (requiring a convening authority to "show in [the] initial action all credits against a sentence to confinement . . . regardless of the source of the credit . . . or for any . . . reason specified by the judge"); *United States v. Delvalle*, 55 M.J. 648, 649 n.1, 656 (Army Ct. Crim. App. 2001); *United States v. Arab*, 55 M.J. 508, 510 n.2, 520 (Army Ct. Crim. App. 2001). The DA 4430 (Result of Trial) reflects this credit. Accordingly, to the extent appellant has not already received this credit, appellant will be credited with 228 days of confinement credit.

DC: So, [appellant] was upset because he couldn't finish the mission, right?

LT: Correct.

DC: So, his frustration was not directed to you, was it?

LT: No, not directly.

DC: So, you didn't feel disrespected, did you?

LT: I would say that I would not speak that way to my superior. I wouldn't expect him to speak that way towards me.

DC: Did you give him a counseling statement?

LT: No.

DC: Did a senior NCO counsel him?

LT: There was a verbal counseling by my platoon sergeant.

DC: Isn't it true that you put [appellant] up for a Bronze Star?

LT: I did.

DC: Isn't it true that he received that Bronze Star?

LT: He did.

DC: And if you felt disrespected in any way, you probably wouldn't [have] put him up for that Bronze Star, would you?

LT: Correct.

## DISCUSSION

Article 66(c), UCMJ, establishes our statutory duty to review a record of trial for legal and factual sufficiency. *United States v. Walters*, 58 M.J. 391, 395 (C.A.A.F. 2003). Under Article 66(c), we may affirm only those findings of guilty that we find correct in law and fact and determine, based on the entire record, should be affirmed. The test for legal sufficiency of the evidence is whether, viewing the evidence in a light most favorable to the government, a fact-finder could rationally have found all the essential elements of an offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 3019 (1979); *United States v. Blocker*, 32 M.J.

281, 284 (C.M.A.1991). The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, this Court is convinced of the appellant's guilt beyond a reasonable doubt. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002); *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).

The elements of disrespect toward a superior commissioned officer, Article 89, UCMJ, are as follows:

> (1) That the accused did or omitted certain acts or used certain language to or concerning a certain commissioned officer;
>
> (2) That such behavior or language was directed toward that officer;
>
> (3) That the officer toward whom the acts, omissions, or words were directed was the superior commissioned officer of the accused;
>
> (4) That the accused then knew that the commissioned officer toward whom the acts, omissions, or words were directed was the accused's superior commissioned officer; and
>
> (5) That, under the circumstances, the behavior or language was disrespectful to that commissioned officer.

*Manual for Courts–Martial, United States* (2012 ed.), pt. IV, ¶13b.

The Court of Appeals for the Armed Forces (CAAF) has generally held all circumstances of a case can be considered in determining whether disrespectful behavior in violation of Article 89, UCMJ, has occurred. *See United States v. Goins*, 15 U.S.C.M.A. 175, 177, 35 C.M.R. 147, 149 (1964). In *United States v. Whitaker*, 5 C.M.R. 539 (A.F.B.R. 1952), for example, the court held that language is not actionable, even where it is clearly offensive, if it is addressed to the world at large, rather than to the person alleged. In *Whitaker*, the accused was charged with saying "to hell with it", signaling his refusal to complete the paperwork necessary to begin a move to a new duty station. The Board stated they were not convinced the words showed "the accused was disrespectful toward [the named individual]." 5 C.M.R. at 556.

In this case, the government asserted appellant's acts of disrespect comprised his arguing with LT JC and his throwing of the kevlar helmet into the Tigris River. The primary evidence offered at trial in support of this charge was the testimony of

LT JC.[2]  When LT JC was asked at trial whether appellant's frustration was *directed at him*, LT JC stated "no, not directly."  LT JC's testimony, therefore, raises a reasonable doubt as to the requirement that the language or act be directed at the officer.  LT JC also specifically agreed with defense counsel's statement that if he "felt disrespected in any way, [he] probably wouldn't [have] put him up for that bronze star."  By his own testimony, LT JC was not the victim or target of appellant's allegedly disrespectful behavior.  We, therefore, find the evidence factually insufficient to establish beyond a reasonable doubt that appellant was disrespectful toward a superior commissioned officer in violation of Article 89, UCMJ.[3]

### CONCLUSION

On consideration of the entire record and the error noted, the findings of guilty of the Specification of Charge VI and Charge VI are set aside and that Specification and Charge are dismissed.

The remaining findings of guilty are AFFIRMED.  We are able to reassess the sentence on the basis of the error noted and do so after conducting a thorough analysis of the totality of the circumstances presented by appellant's case and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986).

In evaluating the *Winckelmann* factors, we find no dramatic change in the penalty landscape or exposure which might cause us pause in reassessing appellant's sentence. Our dismissal of the specification of Charge VI and its Specification only reduces the maximum punishment from thirty-one years to thirty years of confinement. Second, appellant was tried and sentenced by a military judge.  Third, the gravamen of the appellant's conduct is the assaultive behavior towards his wife on multiple occasions, the assault of his son, and the willful disobedience of a superior commissioned officer.  Appellant remains convicted of serious offenses

---

[2]  The only other evidence supporting an Article 89 violation is an audio recording made by appellant's wife of her conversation with appellant wherein he mentioned, "I have had instances where I would throw my Kevlar across the bridge into the river…."  He does not specify details about the incident such as whether others were present.

[3] We note our conclusion would not necessarily be the same had the facts borne out that others had been present when the appellant behaved in the manner described by LT JC.  In other words, we do not address a scenario in which others witness objectively disrespectful behavior towards a superior, even though that superior may not subjectively feel disrespected.

committed upon a backdrop of extremely aggravating circumstances. Finally, based on our experience, we are familiar with the remaining offenses so that we may reliably determine what sentence would have been imposed at trial.

After reassessing the sentence and the entire record, the sentence is AFFIRMED. We find this sentence is not only purged of any error but is also appropriate. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings and sentence set aside by this decision, are ordered restored.

Senior Judge COOK and Judge HAIGHT concur.

FOR THE COURT:

ANTHONY O. POTTINGER
Chief Deputy Clerk of Court